IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IRENE B. ANDERSON, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiffs, | ) ) | No. 17 C 4270 |
| v. | ) ) | Judge Robert W. Gettleman |
| COUNTRY LIFE INSURANCE COMPANY, | ) ) | |
| Defendant. | ) ) | |
| | ) | |
| RICK OCHOA, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiffs, | ) ) | No. 17 C 4274 |
| v. | ) ) | |
| STATE FARM LIFE INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Irene Anderson and Rick Ochoa filed nearly identical class action complaints against Country Life Insurance Company ("Country") and State Farm Life Insurance Company ("State Farm"), respectively, alleging breach of contract stemming from noncompliance with the Illinois Insurance Code, 215 ILCS 5/2—1615, and seeking damages.[1] Country and State Farm ("defendants") have moved to dismiss the complaints under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons discussed below, those motions are granted.

---

[1] Plaintiff Ochoa's complaint also sought, in the alternative, declaratory relief regarding State Farm's obligations under Section 243(1)(b) of the Code, which Ochoa styled as "Count II." Ochoa clarified in his response in opposition to defendant's motion to dismiss (14 C 4274, Doc. 45) that this was a drafting error, and is therefore "moot." Accordingly, the court dismisses "Count II" without addressing it.

# BACKGROUND[2]

Defendants are Illinois-domiciled life insurance companies. Plaintiffs, residents of Illinois (Anderson) and California (Ochoa), each own at least one "participating" life insurance policy through each respective defendant. As owners of those policies, plaintiffs are entitled to some amount of annual dividends, which are paid to plaintiffs out of defendants' annual surplus. Plaintiffs acknowledge that they have received, and continue to receive, annual dividends from defendants, but claim that defendants retain more of their surplus than the Illinois Insurance Code ("the Code") allows, which reduces the dividends paid to plaintiffs. According to plaintiffs, this alleged noncompliance with the Code, and resulting underpayment, is a breach of plaintiffs' contracts with defendants.

The Dividend Provisions sections of plaintiffs' insurance policies say little regarding the payment of annual dividends, and nothing regarding what amount will be paid, or how that amount will be calculated. Ochoa's State Farm policy reads, "We may apportion and pay dividends each year. Any such dividends will be paid at the end of the policy year if all premium dues have been paid."[3] 17 C 4274, Doc. 34 at Exh. A. Anderson's County policy reads as follows:

> This is a participating policy, which means it may share in any dividends We pay to policy Owners. Each year We determine how much money may be paid to Our policy Owners as divisible surplus. We then determine how much of that divisible surplus should be allocated to this policy as an annual dividend. Dividends may be allocated to this policy only while it is in full force or continued as paid-up life insurance.

17 C 4270, Doc. 39 at Exh. A.

---

[2] The following facts are taken from plaintiff's complaint and are assumed to be true for purposes of this motion to dismiss. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).
[3] Ochoa owns multiple State Farm policies. The Dividend Provisions sections of those policies vary slightly in immaterial ways. See 17 C 4274, Doc. 34 at Exhs. B and C.

In asserting their breach of contract claim, plaintiffs rely not on the above policy provisions, but rather on Section 243 of the Code, which plaintiffs claim is incorporated into their policies as a matter of law.[4] Plaintiffs acknowledge that Section 243 (which does not include a private right of action to enforce it) has nothing to say regarding disbursement of dividends to policy owners, but instead dictates how much life insurance companies can retain in a "contingency reserve," which is meant to act as a buffer in the event of unforeseen financial obligations. Thus, Section 243 addresses the financial management of life insurance companies, not the relationship between these companies and their policyholders, by limiting contingency reserves to no more than 10% of their net values.

Acknowledging that Section 243 does not address disbursement of dividends, plaintiffs' argument ties Section 243 to Section 224, which mandates a number of provisions that must be included in life insurance policies that are issued or delivered in Illinois.[5] Plaintiffs specifically rely on Section 224(e), which mandates that any such policy contain:

> A provision that the policy shall participate annually in the surplus of the company beginning not later than the end of the third policy year; and any policy containing provision for annual participation beginning at the end of the first policy year, may also provide that each dividend be paid subject to the payment of the premiums for the next ensuing year; and the insured under any annual dividend policy shall have the right each year to have the dividend arising from such participation either paid in cash, or applied in reduction of premiums, or applied to the purchase of paid-up additional insurance, or be left to accumulate to the credit of the policy, with interest at such rate as may be determined from time to time by the

---

[4] Section 243 provides in pertinent part: "Any domestic life company may accumulate and maintain in addition to an amount equal to the net value of its participating policies computed according to the standard adopted by it under section 223, a contingency reserve not exceeding the following respective percentages of said net values, to wit: . . . if said net values equal or exceed [fifteen million dollars], the contingency reserve shall not exceed ten per centum thereof." 215 ILCS 5/243

[5] State Farm concedes that Ochoa's policies were issued and delivered in Illinois for the purposes of this motion only.

3

> company, but not less than a guaranteed minimum rate specified in the policy, and payable at the maturity of the policy, but withdrawable on any anniversary date, subject to such further provisions as the policy may provide regarding the application of dividends toward the payment of any premiums unpaid at the end of the grace period; and if the insured fails to notify the company in writing of his election within the period of grace allowed for the payment of premium, the policy shall further provide which of such options are effective.

215 ILCS 5/224(e).

Plaintiffs implicitly acknowledge that the Dividend Provisions sections in their policies comply with Section 224(e), but argue that those provisions have been impermissibly "weakened" by defendants' alleged noncompliance with Section 243 of the Code.

## DISCUSSION

### I. Standard of Review

A motion brought under Rule 12(b)(6) challenges the sufficiency of the complaint. Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Though short and plain, the pleading must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which the claim rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level." Id.

This standard demands that a complaint contain sufficient factual matter to state a claim that is plausible on its face and allege more than legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Id. When ruling on a Rule 12(b)(6) motion to dismiss, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004).

**II.     Analysis**

Plaintiffs' argument, though lengthy, detailed, and complicated, is fairly simple when boiled down: defendants retained excess surplus that should have been paid as dividends to plaintiffs and other policyholders. In other words, defendants have violated the Code, and therefore their contracts with plaintiffs, because the Code is incorporated into their contracts as a matter of law, which allows plaintiffs to enforce the Code through a breach of contract claim. The court disagrees.

To state a claim for breach of contract in Illinois,[6] plaintiffs must satisfy the following elements: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." Avila v. CitiMortgage, Inc., 801 F.3d 777, 786 (7th Cir. 2015) (citation omitted). The first two elements are uncontested, and plaintiffs argue that the "guiding precedent" for their claims is Lubin v. Equitable Life Assur. Soc. of U.S., 326 Ill. App. 358 (1st Dist. 1945). The court gives plaintiffs the benefit of the doubt and begins its analysis there.

The court is somewhat puzzled by plaintiffs' insistence that Lubin is the guiding precedent for their claims for a number of reasons, not the least of which is the scarcity with which plaintiffs cite it. Plaintiffs begin their argument with a lengthy block quote from Lubin that does nothing more than define the terms "divisible surplus" and "contingency reserve."

---

[6] Defendants agree that Illinois law applies for the purposes of this motion only.

Plaintiffs then use those definitions to conclude that any surplus not included in the contingency reserve must be divisible surplus. After this, plaintiffs are silent as to Lubin with one exception: they cite it to support their assertion that any amount over the 10% contingency reserve should be paid to policyholders as dividends. Lubin stands for no such proposition. The only portion of Lubin that comes close to supporting plaintiffs' claim is comprised not of the court's words, but rather a direct quote from Lubin's brief, which was not endorsed by the court. See id. at 361.

Perhaps the most puzzling aspect of plaintiffs' reliance on Lubin is the degree to which the portions not cited by plaintiffs undercut their breach of contract claim. Specifically, Lubin quotes the Seventh Circuit at length to highlight the principle that a life insurance policyholder's contractual rights derive from the contract itself, and nothing else:

> In our opinion, the rights of the plaintiff and the persons he purports to represent all stem from their policies in the defendant company. * * * The policy provides that it and the application attached thereto constitute the whole contract between the parties. *Whatever rights a member of a mutual company has are delineated by the terms of the contract, and come from it alone.* * * * The plaintiff says he does not depend for his rights upon the policy * * *. *If the plaintiff depends upon anything but his rights under the contract contained in the policy, he depends upon something that does not exist.*

Id. at 365—66 (emphasis in original) (internal citations and quotations omitted).

Plaintiffs attempt to overcome this seemingly insurmountable hurdle by insisting that the Code is incorporated into their contracts as a matter of law. To support this proposition, plaintiffs detail a long and, at times, complicated legislative history involving several states outside of Illinois and dating back to 1906. The court's response to plaintiffs' complicated narrative is simple: because the court finds plaintiffs' policies unambiguous (and plaintiffs do not argue otherwise) the court need not, and should not, look to legislative history at all. Indeed, when contracts are unambiguous, "the court must not consider any evidence beyond the four

6

corners of the polic[ies] for construing the[m]" and they "should be enforced as written" without speculation as to their purposes. <u>Allstate Ins. Co. v. Amato</u>, 372 Ill. App. 3d 139, 140 (1st Dist. 2007). This is particularly so where, as here, plaintiffs' contracts include an integration clause, as required by the Code. <u>See</u> 215 ILCS 5/224(1)(c); <u>W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co., Inc.</u>, 794 F.3d 666, 675 (7th Cir. 2015) ("[W]here, as here, the contract is integrated, the parties are limited to the four corners of the written agreement for any matter within the scope of the agreement.").

As discussed above, plaintiffs' policies are completely devoid of any reference to a specific amount that will be paid to policyholders as dividends, or how any such amount will be calculated. Plaintiffs' policies state that plaintiffs will be paid dividends annually, and plaintiffs concede that they have been. Plaintiffs' contention that Section 224 of the Code bestows upon them a contractual right to "full participation in divisible surplus" is flatly wrong, and the cases they cite to support it do not. The cases plaintiffs cite stand for nothing more than the principle that insurance policies cannot contradict statutory provisions. <u>See</u>, <u>e.g.</u>, <u>Franey v. State Farm Mut. Auto Ins. Co.</u>, 5 Ill. App. 3d 1040, 1043—45 (5th Dist. 1972). As quoted at length above, Section 224(e) mandates that plaintiffs' policies "shall participate annually in the surplus of the company." Plaintiffs concede that they do. Their breach of contract claim fails. Their contention that Section 243 is implicitly incorporated into their contract is, again, flatly wrong.

Plaintiffs do not, and cannot, allege that Section 243 is even mentioned in their policies. Moreover, plaintiffs concede that Section 243 "does <u>not</u> dictate or provide the allocation of divisible surplus across various classes of contributing policies." 17 C 4274, Doc. 45 at 13 (emphasis in original). Plaintiffs make this concession in an attempt to defeat defendants' argument that Section 243 cannot be incorporated into their policies because insurance

7

regulations prohibit insurance companies from including provisions in their policies that specify a specific percentage of surplus that will be paid as dividends. See 50 Ill. Admin. Code §§ 914.20, 914.30. Plaintiffs' concession does nothing to undermine defendants' argument, but quite a bit to defeat their own claims that Section 243 mandates payment of any surplus to them, and that it is incorporated into their policies by law. As defendants point out, Section 243 says nothing of insurance contracts or policyholders, and plaintiffs' policies say nothing of Section 243. It is in no way part of plaintiffs' policies, and plaintiffs fail to cite anything other than inapt legislative history to suggest that it is.

Plaintiffs have, at most, alleged that defendants have failed to comply with Section 243 of the Code. Even assuming they are correct, plaintiffs cannot seek relief through a breach of contract claim, and have no private right of action to enforce the statute. As previously stated, Section 243 is in no way integrated into plaintiffs' contracts with defendants. Accordingly, any noncompliance with Section 243 has no bearing on plaintiffs' contracts with defendants. Additionally, even if defendants have failed to comply with Section 243, plaintiffs cannot allege that they have been damaged in any way by such noncompliance. Plaintiffs have not alleged, and cannot allege, that they are entitled to any funds improperly withheld in defendants' contingency reserves. Their breach of contract claim fails.

## **CONCLUSION**

For the foregoing reasons, the court grants defendants' motions to dismiss plaintiffs' complaints in their entirety (17 C 4270, Doc. 39; 17 C 4274, Doc. 33) with prejudice.

**ENTER:** **January 16, 2018**

_____
**Robert W. Gettleman**
**United States District Judge**